Just a minute until the courtroom clears, please. Ms. Brown Thank you, Your Honor. Ashley Brown on behalf of the appellant, Deborah Hines, I'd first like to just thank the court for granting oral argument in this case and also for appointing counsel to represent Ms. Hines' appeal. As you know, Ms. Hines has been litigating this case pro se for about five years now and the district court ultimately dismissed her Section 1983 claims on only one ground. The FLEs briefed a number of other issues before the district court, but the district court ultimately did not decide on any of those issues. So unless the court prefers otherwise, I'll start my argument by just addressing the exhaustion of administrative remedies issue. As Your Honors know, the first step of the grievance process requires that Ms. Hines have filed an informal grievance with her grievance counselor. The second step requires that Ms. Hines has filed a formal grievance with the warden or the warden's designee. And the third step requires that Ms. Hines file an appeal with the central office of the Georgia Department of Corrections. I believe that the only issue that remains in this appeal is whether Ms. Hines completed the second step, because ultimately, albeit in many filings before the district court, she did present evidence as to the first and third steps, and so the district court ultimately decided that because she had not presented evidence as to that second step, her claims against all of the defendants must be dismissed. I thought there was some underlying dispute about which grievance system existed at the time. There was an underlying dispute where I believe that Dr. Nazaire, who was the only defendant at that time, he initially believed that because of Ms. Hines' allegations that the grievance process that would have been in place was the two-step grievance process that was in place as of December of 2012. I think it subsequently became clear that Ms. Hines, she filed her first informal grievance in August of 2012, and because of that particular date, the three-step procedure would have been in place at that time, and I believe that the parties all agree that it's a three-step process that applies in this instance. So just to briefly review the evidence that Ms. Hines presented, as to the first step, she has consistently said that in August of 2012, she filed a grievance at the counselor level. That's at Docket Entry 23, page 5, and she repeats that on Docket Entry 23, page 2, and then ultimately, she presented a copy of the informal grievance at Docket Entry 44-1, at 1, and you can see very clearly from that grievance, which is signed by her counselor, Frederick Johnson, and it's dated August 28, 2012. And then as to the third step, she presented a document that's the grievance appeal, and it's dated October 6, 2012, and that's at Docket Entry 44-1, at 2. I understand in this appeal, Dr. Nazaire has raised some, I guess, authenticity concerns as to that document. He says that because it doesn't have a grievance number in the upper right-hand corner, that that somehow means that it's not an authentic document or that she never submitted it to the prison system. It did not have a receipt, which it would have had if she had presented it to the prison officials, like the counselor grievance did have a receipt. I understand, Your Honor, and she writes on the back of that document where she essentially says that the only way you're able to get this form is by getting it from the counselor. I got this document from the counselor and there's no other way for me to have it but for the fact that my counselor gave it to me. I think Turner v. Burnside itself supports that position where it says that grievance appeal forms only come from either a grievance counselor or the grievance coordinator, and that's on page 1081 of the court's decision. Our position here would be, yes, it does not have a grievance number written in the top-hand corner, but it's not Ms. Hines' responsibility to write that grievance number in the top-hand corner. It's the responsibility of the counselor, Mr. Johnson, who gave her that form in this instance. Did the district court address that authenticity issue? The district court did not address the authenticity issue. Once she presented a copy of that grievance appeal, the court accepted it as an authentic document, and so its order, Docket Entry 55, it explicitly says, or finds rather, that Ms. Hines has presented evidence as to the first of and as to the third, but I'm finding that she has not presented, similarly, a copy of the formal grievance, and therefore she hasn't met her evidentiary burden in this case. I thought the district court said it cast a suspicion on it because it did not have a grievance number or receipt. In a footnote, didn't the district court do that? I'm referring to Docket Entry 55 at 5, and she said, I'm sorry, the judge says that therefore the court finds there is no evidence she filed a formal grievance, and it refers earlier in the opinion to having presented formal evidence as to the receipt and the appeal, and so basically the district court is making the comparison there between the evidence that she's presented as to steps one and three and the comparative lack of evidence as to step two. And she testified that Johnson, the counselor, did give her the appeal form, or did give her the form for filing the formal grievance. She did say that. And she testified that she filed it. She did say that. And yet, she could not produce a copy of that formal grievance, notwithstanding the fact that she testified that she always kept her copies and always had a copy. In fact, she said Johnson made a copy for her. She did say that, Your Honor. So isn't that enough to support the district court's finding of facts? So we could not say it's clearly erroneous? Our position is no, and I'm glad that Your Honor is pointing to that exact paragraph in the opinion because it's where I was going next. And so I think the clear error in this case is twofold. The district court first says that Ms. Hines made the allegation that she filed the formal grievance and that her counselor made the copy for her and everything else, that she made that allegation for the first time, and her second objection is to the R&R. And I think that if Your Honor— Which is also suspicious because had she really done all of that, she would have said all that to begin with. I would suggest that she did say all of that to begin with, Your Honor. I think if you turn to her amended complaint, and this is at page three, she says repeatedly that I went through the process in August of 2012 and September of 2012. She does not use the specific words, I filed a formal grievance in September of 2012, but that's what that September 2012 date refers to. And she says that, she mentions that date twice on page three of her amended complaint. And so I think if you look at the documents she did produce, which is an informal grievance dated August 2012, a grievance appeal dated October 2012, and she's referring to the September 2012 date, that September date can only refer to the formal grievance by process of elimination. But if she had a copy and always keeps a copy, why didn't she provide it to the court? I think Ms. Hines, I think the record in this case demonstrates that she made every effort possible to provide the copies that she had to the court, albeit it took some time. But she did provide those copies. She did not ultimately present a copy of that informal grievance, I'm sorry, the formal grievance. And our position would simply be that under the Turner analysis, in step two, Turner very clearly says it's the defendant's burden to present evidence of its affirmative defense of failure to exhaust. And here in this case, we've gone through each of the five pieces of evidence that the appellees or the defendants have relied on, and each of those pieces of evidence is flawed in some way. And so essentially, there's no competent evidence being offered by the defendants as to failure to exhaust at that particular step. And in light of the fact that they have not presented any competent evidence, it was clear error for the district court to essentially shift the defendant's burden onto Ms. Hines. Yes, she made the allegation that she had copies and she ultimately did not present those copies. But unless the defendants come forward with some proof of their own that she did not complete that particular step, I would suggest that the burden is not on her to come forward with those copies. It's sufficient that she's made the allegation in her amended complaint repeatedly, and then she says it more specifically in her objections to the R&R that this is when I completed the formal step on this particular date. And so I acknowledge that in some ways, the district court's ruling in this particular paragraph, it's somewhat subtle, but I think it's very clear that by saying that you say you have copies, but you have not provided any copies for me, therefore, I'm finding as a matter of law that you did not complete this step. I think very clearly inherent in that is that the district court is saying the evidentiary burden is yours, and that's simply not the case under the Turner analysis in light of the defendant's failure to present any evidence of their own. With respect to the notation in one of the grievances, I think it might have been one of the informal ones, the notation by one of the counselors, quote, you cannot grieve this per SOP, end quote. That applies to the claims against GCHJ and Nichols? Yes, because we've cited several cases in our brief that essentially stand for the proposition that a defendant or a prospective defendant in this case doesn't need to be specifically named in the grievance or in the complaint in order for them to be essentially swept within the allegations that have been made by the prisoner. And so in this instance, Ms. Hines was very clearly complaining about her health issues and complaining about Dr. Nazaire for a very long time, and she ultimately says, I would suggest in part because of the representations made to her by Nurse Rogers in that quote you just referred to, that there's a certain confusion about what can and cannot be grieved. And so if Nurse Rogers is telling her you can't grieve medical, which is clearly not true and not what the law requires, there's no reason why Ms. Hines should have known that she could also include Dr. Nazaire's employer within the grievance that she was clearly making about her health care. That issue about availability of the grievance process, though our case law is clear that that is a problem for the defense only if it actually deters. And it seems to me that her testimony was so clear that she would not be deterred. In fact, she was not deterred by what Betty Rogers said. And what she testified to is something like, well, I was thrown aside for a minute, but I filed it and I would always file it because I know I'm very familiar, she says, with this process. So it seems to me she was not deterred. I agree that she ultimately was not deterred, but our position would be that the misinformation essentially that Nurse Rogers is giving her has to be viewed in the context of the warden's misrepresentations that she was investigating Ms. Hines' grievance when in fact she wasn't. And so essentially between Nurse Rogers saying you can't grieve this issue and the warden saying I'm investigating, but I'm not investigating, that that essentially creates confusion about what the grievance process requires. Thank you. Thank you. Ms. McGovern. May it please the Court. My name is Anna Rita McGovern. I'm here on behalf of Appelli of Dr. Yvonne Nazir. It was not clearly erroneous for the district court to find that Hines failed to exhaust under the PLRA because there is no dispute that a formal grievance was required and there is absolutely no evidence that one exists. You had the burden of proving non-exhaustion, right? It is our burden as an affirmative defense, Your Honor, and the district court specifically took that into account on page five of its order. Well, you cited the wrong grievance policy. Your Honor, that was correct. That was because of the confusion in the complaint filed by the pro se inmate which made allegations. I'm not casting any blame or the reason why, but you cited the wrong grievance policy. Correct. And then you failed to present any evidence about that missing step in the grievance process, right? Your Honor, there is no evidence. It's impossible to disprove something that doesn't exist. No, that is no. Hold on. Hold on. All you need is an affidavit from someone at the prison saying, I've reviewed all of the prison logs and all of the grievance records and Ms. Hines did not follow step two of the grievance process. That's a very simple thing to do. It's done all the time. Absolutely, Your Honor. That wasn't done here. It couldn't have, because it wasn't raised until after the magistrate's report and recommendation when for the first time documents showing what the proper grievance procedure would be based on the timing of their filing first. Which goes back to your burden and you're not meeting it. You cite the wrong standard. Once the right standard is brought up by somebody, then you need to realize that now you need evidence to satisfy your burden under the correct standard and no evidence is presented on step two. Isn't that a problem? It's not a problem because it was duly noted by the court and has been well established by case law. The district court itself cited Porter v. Seitler as well as Malik v. Pollard. It was long well established in the court system and they took judicial notice in order to use this as part of the fact finding. Judicial notice of what? Of what the appropriate standard for the time frame was when it was apparent. I am taking that as a given. That once someone brings up what the appropriate grievance procedure is, that becomes the governing procedure. Now I'm talking about the evidence you need to sustain your burden under the right grievance procedure. What evidence did you submit on step two? The difference between the two procedures, Your Honor, is that an informal was required previously and then it wasn't later. Both procedures require a formal. We do have an affidavit by the Deputy Warden of Care and Treatment that says there was no formal grievance. We did submit into evidence the grievance history which showed there was no formal grievance. So we did submit the appropriate information and the court took judicial notice once it came to the attention which jeopardized everyone by the late filing after the report and recommendation by the magistrate court showing a different time frame. What do you mean jeopardized everybody? Your Honor, the information providing the dates was not submitted. Most of the information in this case did not occur until first or second objection to the magistrate's recommendation and report. It wasn't submitted to the magistrate court whatsoever. When it came up... Who came up with the three-step procedure first? There was no knowledge or information in the original complaint alluding to the time frame. Who came up with the three-step procedure first? My predecessor, Michelle Hirsch, at the Attorney General's Office was handling this and the Department of Care and Treatment submitted that there was a two-step procedure based on the allegations in the complaint which was all we had notice of. When it came up, the district court properly took notice of the appropriate... You need to answer my question as hard as it may be for your case. Who came up with the three-step procedure first? Who created it, Your Honor? No. Who noticed it in this case and said, oh, it's not a two-step, it's a three-step? Defendant Dr. Nazir brought it up in their brief in response to plaintiff's objection to the report and recommendation when she first filed an informal notice dated... Then you really can't be using the word jeopardized. Your Honor, ultimately... You're trying to cast aspersions on how the process went and explain why you didn't present affirmative evidence, but part of that blame has to be at the side of your client for not bringing up the proper procedure to begin with. Is that not correct? Your Honor, there was... Well, she couldn't bring up the proper procedure because the original filing by the plaintiff showed the wrong date. Your Honor, the filing by the complainant alleged issues occurring in April of 2013, it was reasonably inferred that the December 2012 grievance policy was in effect based on the allegations in the original complaint. That was never raised as an issue until after the magistrate's report and recommendation when new documents were filed. At that point, then the defendant noted to the court that, in fact, it appears the other policy applied. However, the affidavit stood in terms of discussing that there was no formal grievance and both procedures require a formal grievance. Both parties in this case have stipulated the only issue is whether or not a formal grievance was filed. Everything else has been resolved by the district court and the only thing before this court is whether or not it was clearly erroneous in its fact-finding under Turner v. Burnside for the court to decide that there was no evidence of the grievance, but the main basis for the district court's finding was, in fact, the inconsistencies by Ms. Hines herself and that she was inconsistent in stating she filed a grievance with the counselor and that she had also filed an antelitum letter, but she never made any reference whatsoever at any point in time to the fact that she had filed a formal grievance. She was very clear in many, many, many filings of the process she underwent, and yet she also stated that she kept copies of every document. She refused for a very long time to provide them. She provided them after the magistrate's recommendation and report, and at that point in time, it was clear there was no copy. There certainly was a question regarding the appeal document since it had no grievance number and only had Ms. Hines' handwriting. However, based on the burden, the district court noted that it would construe that in the favor of Ms. Hines, find that she exhausted the informal and the appeal process, but that based on her own inconsistencies, there was a credibility determination by the court. The Supreme Court has advised that on a review of clear error, if the evidence is plausible in light of the record in its entirety, that this court cannot reverse even if it would have viewed the evidence differently. Where there are two permissible views of the evidence, the district court's choice of one cannot be clearly erroneous. In light of the evidence that was before the court at this time, there was an affidavit of the warden of care and treatment that stated there was no record of a formal grievance by Ms. Hines. There was a grievance history showing that she had six other grievances during the time she was incarcerated and was familiar with the process, and that in fact, there was an appeal document that didn't reflect a grievance number and only contained her writing. But ultimately, at the end of the day, this appeal comes down to a district court's fact-finding determination under the second prong of Turner and its assessment of the credibility of Ms. Hines under the issue of exhaustion, which is a matter of abatement. And that court found that it did not find her mere statements credible in terms of the formal grievance. And the parties are in agreement that that is required and that we are here before you on a clearly erroneous standard. I would like to cede my remaining time to my co-counsel, who has a couple of different issues to address in regard to his clients, if you have no further questions. Thank you. Mr. Hennefeld. Good morning, Your Honors. May it please the Court. My name is Paul Hennefeld. I represent Dr. Nichols and Georgia Correctional Health Care. I am going to refer to them as GCHC. Hines did not exhaust any claim related to any of her medical treatment. Therefore, she could not have exhausted to Dr. Nichols or GCHC. They are the employer of Dr. Nazar. They are not at this prison. They are in Augusta. Even if Hines exhausted her claims against Dr. Nazar, she certainly did not exhaust as to Dr. Nichols or GCHC. As the District Court noted, it is not whether Hines filed a formal grievance as to her medical complaints, but it is whether she exhausted her administrative remedies as to GCHC and Nichols. Even under the most liberal reading of Hines' alleged grievance, she did not mention any fact that could suggest a deliberately indifferent hiring decision. Even though grievance is not required to identify a prison official by name, it does require an inmate to set forth enough facts to provide the institution with notice of a problem such that they have an opportunity to address it internally. None of the grievance forms submitted by Hines mention anything concerning Dr. Nazar's qualifications or that the doctor should not be employed at the prison. They did not mention any improper hiring of unqualified medical professionals. At most, Hines' alleged grievance forms relate to the medical treatment provided by Dr. Nazar. Exhaustion is mandatory. The Prison Litigation Act would be rendered meaningless if a deliberately indifferent hiring decision claim is allowed to go forward without exhausting. The District Court examined two additional pieces of evidence when determining exhaustion for GCHC and Dr. Nichols. First was a late grievance filed by Ms. Hines. This was the only grievance document related to the claims against HCHC and Dr. Nichols and it was filed on August 16, 2015, over a year after the lawsuit was filed and four months after GCHC and Dr. Nichols were added to the lawsuit. This is an admission and acknowledgement that Hines never filed a grievance concerning any claim against Dr. Nichols or GCHC. What do you make, if anything, of the statement by Nurse Rogers on that slip to Ms. Hines that, quote, you cannot grieve this per SOP, end quote? Yes, Your Honor. First, that does go to the treatment Dr. Nazar provided, not his qualifications, not deliberately indifferent hiring decision. Hines did not raise that at the District Court and, therefore, that is waived. In fact, she argued the opposite. She has admitted, Ms. Rogers told me I could not grieve, but I did. That is at document 23 at 7. In another pleading, she admits that Rogers told her, quote, she could not grieve medical per SOP, but I still filed. That is at document 44 at 3. It did not prevent her. So she filed the informal grievance after that? Whether that was sufficient or not, her testimony was that she filed an informal grievance even after Nurse Rogers told her that that matter of her care could not be grieved? Yes, Your Honor. Actually, she testified that she filed a formal grievance. She did. Right, but the first one was, that is what I am trying to get straight in my head is the chronology. After Nurse Rogers gave her that slip of paper with that comment, she then files the informal or, according to her, files the formal? All. Five days later, she filed the informal, then she obviously did not file the formal, and then the APL. Right. That was my understanding that after she gets that slip of paper from Nurse Rogers, then the informal one gets filed. That is correct. And that part is undisputed. That is correct. And that is when she started the grievance process. So it did not prevent her at all. Any misstatements did not prevent her at all. Now, the second piece of information, the document that the district court reviewed was a purported settlement letter Hines filed. It purports to acknowledge that Hines filed a formal grievance and offers Hines $250,000 to settle her claims. This was purportedly written by the health services administrator at the prison. I submitted an affidavit from that individual who said that is a forgery. The district court first noted that the settlement letter does not relate to any claim against Dr. Nichols or GCAC for a deliberately indifferent hiring decision. So it has no bearing. Second, the magistrate court determined that it was not credible, it was a forgery, and this determination was not modified by the district court. In fact, the district court pointed out another reason to question its authenticity at page 6, note 6. She never mentioned the settlement letter when the court was originally considering exhaustion as to Dr. Nazar. The district court found that the settlement letter was not genuine. This is another reason to question the credibility of Hines and the authenticity of the documents she submitted. It should be noted I have filed a motion for sanctions that hasn't been ruled on, but the only permissible sanction for an inmate filing a forged document in federal court is dismissal of the entire action. Thank you, Your Honors. Ms. Brown? Thank you, Your Honors. I'd point the court's attention to page 4 of Ms. Hines' complaint where she writes in the top-hand margin, I spoke to Dr. Nazar. He said it's okay from February 2012 to present. And so essentially, she says right there that my issues with Dr. Nazar predate February 2012. Dr. Nazar, in this case, apparently, for reasons that are unclear to me, understood that the symptoms Ms. Hines was complaining about started sometime in 2013. She's clearly referencing a February 2012 date, which means that Dr. Nazar was unnoticed at the time he filed his motion to dismiss that it should have been the three-step process and not the two-step process. He chose to attach the wrong standard operating procedure and essentially to present evidence in this case as to that standard operating procedure. Does that really matter? Because the evidence that was presented goes back to 2011. That's correct. So that it obviously refers to the prison history, all of the grievances she filed and goes all the way back to January 5, 2011. Exactly. So the evidence is the same and we learned later, doesn't matter who helped us learn, but the court learned later that the three-step process operated instead of the two-step process. But the evidence is the same notwithstanding, it seems to me. I think that's correct, Your Honor. But I bring it up simply because Dr. Nazar has now tried to make the argument that there was somehow some jeopardy here because they were somehow misled by the allegations of Ms. Hines' complaint. I think that's incorrect. It may be that they misunderstood Ms. Hines' complaint. That doesn't mean that she somehow misled them as to the time period in this case. That's probably true. Thank you. And so just to briefly address what evidence they presented in this case, it's only five pieces of evidence. It's a standard operating procedure which wasn't in effect at the time and it's a grievance history that clearly does not reflect the informal grievance that my client presented evidence of and the grievance appeal that she presented evidence of. You cannot accept that document as being authoritative when we know that there are at least two pieces of evidence that are not reflected in the grievance history. So it patently makes no sense to somehow represent that document as authoritative when it's shown to be demonstrably false by the evidence Ms. Hines has presented. But the district court was not required to completely disregard either the evidence of the prison history, the grievance history, or the affidavit of Rogers. I agree with that. The district court properly said they are obviously not complete because there was this informal grievance under the other system apparently that complements the formal grievance system. And then there was a counselor's level of grievance that should have been on that grievance history. I agree with that completely, Your Honor. And I think that what this goes to is Judge Jordan's question earlier, which is, or his statement rather, that all you needed to do was present an affidavit from the prison officials. I think that once Ms. Hines presents her evidence as to the informal step and the grievance appeal, the opportunity is now there for the GCHC defendants in particular to say, okay, we now have her evidence. What other evidence do we need to get in order to combat her evidence? And I think that's very simple. You go and get an affidavit from her counselor. You get an affidavit from the grievance coordinator. You get an affidavit from the warden. They didn't do any of those things in this case. Instead, they just referred back to the evidence that the district court had already considered and which is known to be deficient. It seems to me there's overwhelming evidence to satisfy the defendant's burden of proof. First place, Plaintiff herself testified that she did in fact file the formal grievance. She testified that she always, she testified that Counselor Johnson gave her the grievance form and she filed it. And then he made a copy for it. And then she testified she keeps all of her copies. And then she was asked for that and did not produce it. She produced other documents, but she did not produce that one. And the district court found she gave no explanation for that. District court, docket 101 at page 4. And then there were suspicious circumstances about the appeal anyway, the lack of the number and the lack of the receipt, which should have been there if she had submitted it to the prison officials. And then there's the settlement letter that the district court found was not genuine and raised suspicions about Mrs. Hines. So it seems to me there's ample evidence to support the district court's finding. What's wrong with my thinking? I think that under the Turner analysis, the fact that she's made the allegation that she had, that she completed that step is sufficient in light of the fact that they have not presented any competent evidence to the contrary. So that would be my first response. I think to just end on the settlement letter that you mentioned, you know, the district court did make findings in its order that there are certain things about this that are not credible. The district court also said in that very same order that Nurse Rogers is not credible. He says that twice. And the reason for that is that Nurse Rogers had previously submitted the declaration saying that my client only filed one complaint. It was about a copay. It had nothing to do with the allegation in this case. And we know that that's not true. And so to the extent they're very clearly making the argument that Mrs. Hines is not credible, one of the witnesses that they've relied on also has been found by the district court to not be credible. And to briefly remark on the motion for sanctions issue, that motion was completely briefed at the time that the district court issued its second motion to dismiss order. And so had the district court wanted to take up that issue and, as a sanction, dismiss Mrs. Hines' complaints on that grounds, he could have done that. He chose not to, and that goes to the lack of credibility of Nurse Rogers. I understand. Thank you, Your Honor.